## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  21-cv-2381

**A.A.** by and through his grandmother, G.A.,
**B.B.** by and through her mother, P.B., and
**C.C.** by and through her mother, P.C.,
individually and on behalf of a class,

      Plaintiffs,

   vs.

**KIM BIMESTEFER**, in her official capacity
as Executive Director of the Colorado Department
of Health Care Policy and Financing,

      Defendant.
_____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
_____

   Now comes the Plaintiffs, by and through their attorneys, Robert H. Farley, Jr., Ltd., and

the National Health Law Program, and file the following complaint against the Defendant.

## I.  INTRODUCTION

   1.  The Plaintiffs and Class are Medicaid-eligible children with behavioral or emotional

disorders who need Intensive Home and Community-Based Services (IHCBS) in order to correct

or ameliorate their conditions.  The Plaintiffs and Class are entitled to receive these medically

necessary services in the community under the Early and Periodic Screening, Diagnostic, and

Treatment (EPSDT) provisions of the Medicaid Act, the Americans with Disabilities Act (ADA),

and the Rehabilitation Act.

1

2.  The Plaintiffs and Class have experienced unnecessary institutionalization and other serious harms as result of the Defendant's failure to provide or arrange for medically necessary mental health - behavioral services required under the EPSDT provisions.

3.  The Plaintiffs and Class have been discriminated against by the Defendant as the Defendant makes available to other disabled groups in Colorado, Intensive Home and Community-Based Services but denies those same services to the Plaintiffs and Class.

4.  Defendant's policies, practices, procedures, acts, failures, and omissions cause Plaintiffs and the Class to be unnecessarily institutionalized or at serious risk of institutionalization for treatment of their behavior or emotional disorders.

5.  The Defendant is well aware that children (up to the age of 21) with severe mental illnesses or severe emotional disorders fail to receive the medically necessary home and community-based services that the Federal law requires.

6.  In 2019, the Colorado General Assembly found the following:

> The behavioral health system and child- and youth-serving agencies are often constrained by resource capacity and systemic barriers that can create difficulties in providing appropriate and cost-effective interventions and services for children and youth.  C.R.S. Sec. 25.5-5-801(1)(b)
>
> . . . Colorado must implement a model of comprehensive system of care for families of children and youth with behavioral health challenges. C.R.S. Sec. 25.5-5-801(2)
>
> (Senate Bill 19-195)
> https://leg.colorado.gov/sites/default/files/2019a_195_signed.pdf

7.  Colorado identified 26,707 children (up to the age of 21) who had a severe emotional disturbance (SED) in Fiscal Year 2020.  (Colorado 2020 Mental Health National Outcome Measures - SAMSHA Report at p. 7).

https://www.samhsa.gov/data/sites/default/files/reports/rpt35285/Colorado.pdf

Only 223 children who had been diagnosed as having a mental health disorder and found to be at risk of out-of-home placement received intensive home and community-based services (residential and in-home services), with 40 children receiving residential treatment and 183 children receiving intensive home and community based services pursuant to "The Children and Youth Mental Health Treatment Act (CYMHTA)." (Colorado Office of Behavioral Health – FY 2019-2020 Report at page 6). https://drive.google.com/file/d/1aaqMHgRjj5pVDkReO7St8Kp4-JJjbTML/view. One of the requirements of eligibility for CYMHTA is that the child or youth "[i]sn't eligible for and can't have Medicaid." https://cdhs.colorado.gov/behavioral-health/cymhta.

8. Residential intensive community-based services are provided to 163 children in the "Children's Habilitation Residential Program" as of June 2021, but this program is limited to children who have an intellectual or developmental disability as opposed to a child with just a mental health condition or diagnosis. (HCPS – FY 2020-21 – Medicaid Premiums Expenditure and Caseload Report – July, 2021 at page 13).

https://hcpf.colorado.gov/sites/hcpf/files/2021%20July%2C%20Joint%20Budget%20Committee%20Monthly%20Premiums%20Report%20%28Clean%20Version%29.pdf

*See also* CO HCBS Children Waiver Chart – September 2019).

https://hcpf.colorado.gov/sites/hcpf/files/CO%20HCBS%20Children%20Waiver%20Chart-September%202019.pdf. Intensive Community-Based Services are provided to 2,299 children in the "Children's Extensive Support Waiver," but this program is also just limited to children with an intellectual or developmental disability and not provided to children with just a mental health condition or diagnosis. *Id.*

9.  The Colorado Department of Human Services Office of Behavioral Health in their "2020 Statewide Behavioral Health Needs Assessment – Children and Youth with Complex Needs" report stated:

> Stakeholder described both rising anxiety and substance use among adolescents in the state with concerns about access to the full continuum of care needed to meet adolescent needs.  Acute care crisis and residential services were frequently mentioned as gaps in the current system.  *Id.* at p. 2.

> In the surveys disseminated as part of the needs assessment, Colorado's communities and providers identified children and youth as a population who is least likely to get the behavioral health services and supports needed.  *Id.* at p. 4.

> Numerous reports indicate that parents encounter challenges accessing appropriate care and this is across payors (public and commercial).  *Id.* at p. 5.

> More options for services in schools, inpatient bed capacity, respite and long-term residential services for both mental health and substance use are indicated as a high need within the state.  Intensive home and community-based services are another element of the continuum that could support children and youth while reducing the need for inpatient or acute care services.  *Id.* at p. 7.

https://drive.google.com/file/d/1-RPGkZCoIxJsmzZjc9tniSlYcnGxUYrg/view

10.  Based on the 2021 State of Mental Health in America Report by Mental Health America, for children and youth specifically, Colorado currently ranks 42nd in the United States when analyzing several indicators including the prevalence of mental illness and access to care. (*Id.* at p. 11).  In Colorado, 60.9 percent of youths with a major depression did not receive any mental health treatment.  (*Id.* at p. 28).  Only 21.5 percent of youths with severe depression received consistent treatment in Colorado.  (*Id.* at p. 29).

https://mhanational.org/sites/default/files/2021%20State%20of%20Mental%20Health%20in%20America_0.pdf.

11.  On May 25, 2021, Children's Hospital Colorado declared a "State of Emergency" in youth mental health as the hospital is "seeing [their] pediatric emergency departments and [their]

4

inpatient units overrun with kids attempting suicide and suffering from other forms of major

mental health illness." The hospital further stated:

> We've had several of our team members working diligently, every day,
> every hour, looking for placement for this children. The reality is that there
> are limited resources available in our community and in our state . . . At a time
> when we are seeking volumes increase, severity increase and overall need, the
> system that is meant to be in place to serve these kids does not only not exist, but
> those who are attempting to do this work are currently underwater.
> *See* https://www.childrenscolorado.org/about/news/2021/may-2021/youth-mental-
> health-state-of-emergency/

12. As a result of the Defendant's continued over reliance on institutions, hundreds of

children with behavioral and emotional disorders cycle through hospitals, emergency rooms and

other acute care facilities, without obtaining any long-term relief. The State of Colorado system

of mental health care for children is so weak and uncoordinated that most children are released

from facilities with little or ineffective follow-up community mental health care. The services

offered after discharge from an institutional setting consists of little more than minimal

medication management and outpatient counseling once a week for one hour, which is

inadequate for a child with significant behavioral and emotional problems. Many children and

families find themselves thrown back into a crisis, forced to repeat the cycle of

institutionalization. Under the current system, the Defendant opts to fund children living with

behavioral and emotional problems in hospitals and institutions rather than providing the

intensive, individualized care that allows children to remain in their homes and communities.

13. As Medicaid-eligible persons under the age of 21, the Plaintiffs and Class are entitled

to receive Early and Periodic Screening, Diagnostic, and Treatment (EPSDT), which includes

services necessary to correct or ameliorate mental health conditions. 42 U.S.C. Sec.

1396a(a)(43)(C); 42 U.S.C. Sec. 1396d(a)(4)(B); 42 U.S.C. Sec. 1396d(r)(5).

14.  Despite widespread agreement among mental health experts that children with significant emotional or behavioral disorders need Intensive Home and Community-Based Services (IHCBS), the Plaintiffs have not received such services.

15.  Plaintiffs and the Class cannot wait any longer for the Defendant to fulfill her legal mandate to provide for the IHBCS that they desperately need.  Accordingly, Plaintiffs, individually and on behalf of the Class, seek prospective injunctive relief ordering the Defendant to provide necessary IHCBS to correct or ameliorate their conditions and prevent their unnecessary institutionalization.

## II.   JURISDICTION & VENUE

16.  This Court has jurisdiction over Plaintiffs federal law claims pursuant to 28 U.S.C. Sections 1331 and 1343, which grant this Court original jurisdiction in all actions authorized by 42 U.S.C. Sec. 1983 to redress the deprivation under color of state law any rights, privileges, or immunities guaranteed by the United States Constitution and Acts of Congress.   This Court has jurisdiction to hear claims arising under the Medicaid Act, Title II of the ADA, and Section 504.

17.  This Court has jurisdiction to order the declaratory and injunctive relief sought in this action, as well as other relief that is "further necessary and proper" under 42 U.S.C. Sec. 1983, 42 U.S.C. Sec. 12133, 29 U.S.C. Sec. 794a, 28 U.S.C. Sec. 2201-2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and 42 U.S.C. Sec. 1988.

18.  Venue is proper in the United States District Court for District of Colorado under 28 U.S.C. Sec. 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and because Defendant Bimestefer may be found here.

6

### III.  PARTIES

**A. The Named Plaintiffs**

**Plaintiff A.A.**

19.  Plaintiff A.A. is a 13-year-old Medicaid recipient residing in Northglenn, Colorado,

who has been diagnosed with multiple mental illnesses and conditions.  Due to Defendant's

failure to ensure the provision of Intensive Home and Community-Based Services (IHCBS),

A.A. remains unnecessarily hospitalized / institutionalized.  Pursuant to Fed.R.Civ.P.17(c), A.A.

brings this action through his grandmother / guardian and next friend, G.A.

**Plaintiff B.B.**

20.  Plaintiff B.B is a 16-year-old Medicaid recipient residing in Castle Rock, Colorado,

who has been diagnosed with multiple mental illnesses and conditions.  Due to Defendant's

failure to ensure the provision of Intensive Home and Community-Based Services (IHCBS),

B.B. remains unnecessarily hospitalized / institutionalized.  Pursuant to Fed.R.Civ.P.17(c), B.B.

brings this action through her mother and next friend, P.B.

**Plaintiff C.C.**

21.  Plaintiff C.C. is a 13-year-old Medicaid recipient residing in Aurora, Colorado, who

has been diagnosed with multiple mental illnesses and conditions.  Due to Defendant's failure to

ensure the provision of Intensive Home and Community-Based Services (IHCBS), C.C. has been

unnecessarily hospitalized / institutionalized.  Pursuant to Fed.R.Civ.P.17(c), C.C. brings this

action through her mother and next friend, P.C.

**B.  The Defendant**

22.  The Defendant, Kim Bimestefer, is the Executive Director of the Colorado

Department of Health Care Policy and Financing (HCPF).  As such she is responsible for the

supervision and oversight of HCPS medical programs and contractual arrangements.  Her

responsibilities in this role include the responsibility to ensure compliance with federal law.  She

is being sued in her official capacity.

## IV.  CLASS ACTION ALLEGATIONS

23.  Plaintiffs bring this statewide action pursuant to Federal Rules of Civil Procedure

23(a) and 23(b)(2) on behalf of:

> All Medicaid-eligible children with disabilities under the age of 21 in the
> State of Colorado: (1) who have been diagnosed with a mental health or
> behavioral disorder; and (2) for whom a physician or other licensed
> practitioner of the healing arts has recommended intensive home and
> community-based services to correct or ameliorate their disorders.

24.  The Class is so numerous that joinder of all persons is impracticable.  As described,

supra, paragraphs 7, 9-10, there are thousands of children with a behavioral or emotional

disorder in Colorado.

25.  The Plaintiffs and Class have limited financial resources, and as a Medicaid

recipient, are unlikely to institute individual actions.

26.  the claims of the Class members raise common questions of law and fact and

include:

> (a)  Whether the Defendant is providing necessary and timely Intensive Home and
>
>      Community-Based Services to the Plaintiffs and the Class consistent with the
>
>      EPSDT and Reasonable Promptness requirements of the Medicaid Act pursuant
>
>      to 42 U.S.C. Sec. 1396a(a)(10)(A), 1396d(a)(4)(B), 1396a(a)(43)(C),
>
>      1396d(r)(5); and 42 U.S.C. Sec. 1396a(a)(8);
>
> (b)  Whether the Defendant is failing to provide Plaintiffs and the Class with services
>
>      in the most integrated setting appropriate to their needs, thereby resulting in

unnecessary institutionalization or serious risk of institutionalization of Plaintiffs

and the Class;

(c)  Whether the Defendant violated the ADA and/or the Rehabilitation Act when

the Defendant failed to make reasonable modifications to the existing Medicaid

benefit which would result in the availability of Intensive Home and Community-

Based Services for the Plaintiffs and Class;

(d)  Whether the Defendant utilizes criteria or methods of administration in their

Medicaid program that otherwise have the effect of discriminating against

Plaintiffs and members of the Class on the basis of their disabilities;

(e)  Whether the Defendant's policies and practices result in disparate treatment of

comparably situated disabled persons constitutes prohibited discrimination under

the ADA by providing Intensive Home and Community-Based Services

(residential and in-home services) to a group of disabled children (up to the age of

21) who have an intellectual or developmental disability as opposed to a group of

disabled children with just a mental health condition or mental health diagnosis;

and

(f)  Whether the Defendant's policies and practices result in disparate treatment of

comparably situated disabled persons constitutes prohibited discrimination under

the ADA by providing Intensive Home and Community-Based Services

(residential and in-home services) to a group of disabled children (up to the age of

21) who have a mental health condition or a mental health diagnosis and who are

not eligible for Medicaid as opposed to a group of children who have a mental

health condition or a mental health diagnosis and who are eligible for Medicaid.

9

27.  The claims and remedies asserted by Plaintiffs are typical of the claims and remedies asserted by the Class.  Plaintiffs and the Class are all Medicaid-eligible children with disabilities under the age of 21 who have been diagnosed with a mental health or behavioral disorder, who require Intensive Home and Community-Based Services in order to correct or ameliorate a mental illness or behavioral condition.  The remedies sought by Plaintiffs are the same remedies that would benefit the Class: an injunction requiring Defendant to take affirmative actions to provide or arrange for necessary Intensive Home and Community-Based Services for all individual Plaintiffs and the Class in order to correct or ameliorate their significant mental health conditions.

28.  The Plaintiffs are adequate representative of the Class because they suffer from deprivations identical to those of the Class members and have been denied the same federal rights that they seek to enforce on behalf of the other Class members.  The Plaintiffs will fairly and adequately represent the interest of the Class members, many of whom are unable to pursue claims on their own behalf as the result of their disabilities.  Plaintiffs interest in obtaining injunctive relief for the violations of rights and privileges is consistent with and not antagonistic to those of any person within the Class.

29.  Plaintiffs' counsel are qualified, experienced and able to conduct the proposed litigation.  Plaintiffs' counsel have extensive experience litigating Rule 23(b)(2) class actions under the Medicaid Act, the ADA, and Section 504.

30.  Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the party opposing the Class or could be

10

dispositive of the interests of the other members or substantially impair or impede the ability to protect their interests.

31.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy in that:

> (a)  A multiplicity of suits with consequent burden on the courts and defendants should be avoided.

> (b)  It would be virtually impossible for all class members to intervene as parties-plaintiffs in this action.

32.  The Defendant has, with knowledge of the requirements of the EPSDT mandate, the Medicaid Act, the ADA, the Rehabilitation Act and implementing regulations, acted or refused to act, and continues to act or refuse to act, on grounds applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the Class as a whole.

## V.  STATUTORY AND REGULATORY FRAMEWORK FOR DEFENDANT

### A.  The Federal Medicaid Act and EPSDT Mandate

33.  Medicaid is a cooperative federal and state-funded program authorized and regulated pursuant to the Medicaid Act, which provides medical assistance for certain groups of low-income persons.  *See* 42 U.S.C. Sec. 1396, *et seq.*

34.  Medicaid's central purpose is to furnish medical assistance, rehabilitation, and other services to help low-income families and individuals attain or retain capability for independence or self-care.  *See* 42 U.S.C. Sec. 1396-1.

35.  State participation in Medicaid is voluntary; however, States that choose to receive federal funding for a significant portion of the cost of providing Medicaid benefits and

administering the program must adhere to the minimum federal requirements set forth in the Medicaid Act, as amended, and its implementing regulations.

36.   Each State participating in the Medicaid program must submit a Medicaid plan to the Secretary of Health and Human Services (HHS) for approval.  The State plan describes the administration of the program and identifies the services the State will provide to eligible beneficiaries.  42 U.S.C. Sec. 1396.

37.   States participating in the Medicaid program must designate a single state agency that has the non-delegable duty to administer or supervise the administration of the Medicaid program and to ensure that the program complies with all relevant laws and regulations.  *See* 42 U.S.C. Sec. 1396a(a)(5); 42 C.F.R. Sec. 431.10.

38.   In Colorado, the Department of Health Care Policy and Financing (HCPF) is the single state agency responsible for administering the Medicaid program.

39.   States must cover certain mandatory services in their state Medicaid plans.  42 U.S.C. Sec. 1396a(a)(10)(A); 1396d(a).  Mandatory services include EPSDT for children under age 21.  42 U.S.C. Sec. 1396a(a)(10)(A), 1396a(a)43), 1396d(a)(4)(B), 1396d(r).

40.   Federal law requires States to fully implement the EPSDT program of Medicaid. The purpose of the ESPDT program is to ascertain children's physical and mental health conditions and ensure children receive needed services "to correct or ameliorate defects and physical and mental illnesses and condition. . ."  42 U.S.C. Sec. 1396d(r)(5).  Under EPSDT, States are required to provide screening services to identify health and mental health conditions and illness.  42 U.S.C. Sec. 1396d(r)(1).  States also provide needed diagnostic and treatment services to correct or ameliorate health or mental health conditions.  42 U.S.C. Sec. 1396a(a)(43)(C); 42 U.S.C. Sec. 1396d(r)(5).  Needed services must be provided if they are

among those listed in section 1396d(a) of the Medicaid Act, whether or not those services are covered for adults.  42 U.S.C. Sec. 1396d(r)(5); 42 C.F.R. Sec. 441.56(c).

41.  EPSDT requires the State of Colorado to provide or arrange for the provisions of covered EPSDT services.  Subsection (B) of 42 U.S.C. Sec. 1396a(a)(43) states that a state plan must "provide for . . . providing or arranging for the provision of such screening services in all cases where they are requested[.]"  42 U.S.C. Sec. 1396a(a)(43)(B).  Subsection (C) stats that a state plan for medical assistance must "provide for . . . arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services."  42 U.S.C. Sec. 1396a(a)(43)(C).

42.  EPSDT services must be covered in they correct, compensate for, improve a condition, or prevent a condition from worsening, even if the condition cannot be prevented or cured.  *EPSDT: A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents,* U.S. Dep't of Health & Human Servs., Ctrs., (June 2014), https://www.medicaid.gov/medicaid/benefits/downloads/epsdt_coverage_guide.pdf at 10.

43.  Specifically, states participating in the Federal Medicaid Program must establish and implement an EPSDT program in their state Medicaid plan that:

> (a)  informs all persons in the state who are under the age of 21 and eligible for medical assistance of the availability of EPSDT as described in 42 U.S.C. Sec. 1396d(r);

> (b)  provides or arranges for the provision of such screening services in all cases where they are requested (42 U.S.C. Sec. 1396a(a)(43)); and

> (c)  provides or arranges for corrective treatment, the need for which is disclosed by such child health screening services.  *Id.*

44. Colorado has chosen to participate in the Medicaid program, and therefore must provide EPSDT services to eligible children under the age of 21.

45. The State of Colorado has an obligation to ensure that all services required by the EPSDT provisions are being provided to Medicaid-eligible children effectively.

46. The Medicaid Act requires states to provide covered services (or "make medical assistance available"), including mental health services provided pursuant to the EPSDT mandate, to Medicaid beneficiaries when medically necessary, with "reasonable promptness to all eligible individuals." 42 U.S.C. Sec. 1396a(a)(8). "The term 'medical assistance' means payment of part or all of the cost of the . . . care and services or the care and services themselves, or both." 42 U.S.C. Sec. 1396d(a).

47. Additionally, states "must set standards for the timely provision of EPSDT services which meet reasonable standards of medical and dental practice . . . and must employ processes to ensure timely initiation of treatment, if required, generally within an outer limit of six months after the request for screening services." 42 C.F.R. Sec. 441.56(e).

48. States must "make available a variety of individual and group providers qualified and willing to provide EPSDT services." 42 C.F.R. Sec. 441.61(b).

**B. Intensive Home and Community-Based Services (IHCBS)**

49. For children with significant emotional and behavioral disorders, Intensive Home and Community-Based Services are medically necessary to treat and ameliorate their disorders.

50. Rehabilitative Services (42 U.S.C. Sec. 1396d(a)(13)) and Case Management Services (*Id.* at Sec. 1396d(a)(19), 1396n(g)) are among the services listed in 42 U.S.C. Sec. 1396d(a) that are encompassed within Intensive Home and Community-Based Services and covered by Medicaid. These services must be provided by the state under the EPSDT mandate.

14

51. Rehabilitative Services are defined to include:

> Any medical or remedial services (provided in a facility, a home, or other setting)
> recommended by a physician or other licensed practitioner of the healing arts
> within the scope of their practice under State law, for the maximum reduction of
> physical or mental disability and restoration of an individual to the best possible
> functional level.  Section 1905(a)(13) of the Social Security Act; 42 C.F.R. §
> 440.130(d).

52. Services that can be covered as Rehabilitative Services include:

> (a)  Community-Based Crisis Services, such as Mobile Crisis Teams, and
>      Intensive Outpatient Services;

> (b)  Individualized mental health and substance use treatment services, including
>      in non-traditional settings such as a school, a workplace or at home;

> (c)  Medication management;

> (d)  Counseling and Therapy, including to eliminate psychological barriers that
>      would impeded development of community living skills.

> *See*:  *EPSDT: A Guide for States: Coverage in the Medicaid Benefit for Children
> and Adolescents,* U.S. Dep't of Health & Human Servs., Ctrs., (June 2014),
> https://www.medicaid.gov/medicaid/benefits/downloads/epsdt_coverage_guide.pdf at 11.

53.  Like other services covered under EPSDT, rehabilitative services need not actually

cure a disability or completely restore an individual to a previous functional level.  Rather, such

services are covered when they ameliorate a physical or mental disability.

54.  Under Colorado policy, Intensive home and community-based services include, but

are not limited to:

> (a)  Individual Therapy and Family Therapy;

> (b)  Therapeutic Services and/or Behavioral Support Services;

> (c)  Wraparound Services, Wraparound Plan and Wraparound Monitoring;

> (d)  Transition Support Services;

(e)   Life skills training;

(f)   Peer Mentorship;

(g)   Applied Behavioral Analysis, therapeutic services; and

(h)   Case Management Services and Residential (Habilitation) Services and

Supports.

55.   The Centers for Medicare and Medicaid Services (CMS) and the Substance Abuse

and Mental Health Services Administration (SAMSHA) issued a joint informational bulletin on

May 7, 2013 and stated as follows:

> This Informational Bulletin is intended to assist states to design a benefit that will meet the needs of children, youth, and young adults with significant mental health conditions. Children with significant emotional, behavioral and mental health needs can successfully live in their own homes and community with the support of the mental health services described in this document.  These services enable children with complex mental health needs – many of whom have traditionally been served in restrictive settings like residential treatment centers, group homes and psychiatric hospitals – to live in community settings and participate fully in family and community life.
>
> The information in this Bulletin is based on evidence from major U.S. Department of Health and Human Services (HHS) initiatives that show that these services are not only clinically effective but cost effective as well.  The Bulletin also identifies resources that are available to states to facilitate their work in designing and implementing a benefit package for this vulnerable population.  Developing these services will help states comply with their obligations under the Americans with Disabilities Act (ADA) and to Medicaid's Early Periodic Screening, Diagnostic and Treatment (EPSDT) requirements, specifically with respect to mental health and substance use disorder services. (fn. omitted).
>
> *See* CMS, Joint CMCS and SAMHSA Informational Bulletin:  Coverage of Behavioral Health Services for Children, Youth, and Young Adults with Significant Mental Health Conditions (May 7, 2013) at page 1.
> https://www.medicaid.gov/federal-policy-guidance/downloads/cib-05-07-2013.pdf

56.   While the core benefit package for children and youth with significant mental health

conditions . . . include[s] traditional services, such as individual therapy, family therapy, and

medication management, . . . a number of other home and community-based services

significantly enhanced the positive outcomes for children and youth.  These services include

intensive care coordination (often called wraparound service planning/facilitation), family and

youth peer support services, intensive in-home services, respite care, mobile crisis response and

stabilization, and flex funds.  Each of these services is described below.

*See* CMS, Joint CMCS and SAMHSA Informational Bulletin:  Coverage of Behavioral Health
Services for Children, Youth, and Young Adults with Significant Mental Health Conditions
(May 7, 2013) at pages 3-5.

57.  The Medicaid statue also provides authority for states to operate Home and

Community Based waiver programs.  42 U.S.C. sec. 1396n(c).  The federal Medicaid agency

may grant States the authority to waive certain Medicaid requirements to enable them to provide

Home and Community Based Services to individuals who would otherwise need the level of care

provided in an institutional setting.  42 U.S.C. sec. 1396n(c)1.

58.  Unlike traditional Medicaid, States may limit enrollment in these waiver programs

and offer services, such as respite, that are not otherwise authorized under Medicaid.  42 U.S.C.

sec. 1396n(c)(3), 1396n(c)(4)(B).  Traditional Medicaid services, such as rehabilitation services

and case management, are also provided to individuals enrolled in the waiver.

**1. Intensive Care Coordination:  Wraparound Approach**

59.  Intensive Care Coordination includes assessment and service planning, accessing and

arranging for services, coordinating multiple services, including access to crisis services.

Assisting the child and family to meet basic needs, advocating for the child and family, and

monitoring progress are also included.  *Id.*

60.  The Wraparound Approach is a form of intensive care coordination for children with

significant mental health conditions.  It is a team-based, collaborative process for developing and

implementing individualized care plans for children and youth with complex needs and their families . . . The Wraparound "facilitator" is the intensive care coordinator who organizes, convenes, and coordinates this process. The Wraparound Approach is done by a child and family team for each youth that includes the child, family members, involved providers, and key members of the child's formal and informal support network, including members from the child serving agencies. The child and family team develops, implements, and monitors the service plan. *Id.*

## 2. Peer Services: Parent and Youth Support Services

61. Parent and Youth Support Services include developing and linking with formal and informal supports; instilling confidence; assisting in the development of goals; serving as an advocate, mentor, or facilitator for resolution of issues; and teaching skills necessary to improve coping abilities. *Id.*

## 3. Intensive In-Home Services

62. Intensive In-Home Services are therapeutic interventions delivered to children and families in their homes and other community settings to improve youth and family functioning and prevent out-of-home placement in inpatient or PRTF settings. The services are typically developed by a team that can offer a combination of therapy from a licensed clinician and skills training and support from a paraprofessional. The components of intensive in-home services include individual and family therapy, skills training and behavioral interventions. Typically, staff providing intensive in-home services have small caseloads to allow them to work with the child and family intensively, gradually transitioning them to other formal and informal services and supports, as indicated. *Id.*

## 4. Respite Services

18

63. Respite Services are intended to assist children to live in their homes in the community by temporarily relieving the primary caregivers. Respite services provide safe and supportive environments on a short-term basis for children with mental health conditions when their families need relief. *Id.*

### 5. Mobile Crisis Response Services

64. Mobile Crisis Response Services are instrumental in defusing and de-escalating difficult mental health situations and preventing unnecessary out-of-home placements, particularly hospitalizations. Mobile crisis services are available 24/7 and can be provided in the home or any setting where a crisis may be occurring. *Id.*

### 6. Residential Stabilization Services

65. Residential Crisis Stabilization Services provides intensive short term, out of home resources for the child and family, helping to avert the need for psychiatric inpatient treatment. The goal is to address acute mental health needs and coordinate a successful return to the family at the earliest possible time with ongoing services. During the time that the child is receiving residential crisis stabilization, there is regular contact between the team and the family to prepare for the child's return to the family. *Id.*

### 7. Residential Treatment Services

66. Intensive Community-Based Residential Treatment Services are required when individuals exhibit high levels of aggression and self-destructive behavior, which requires intensive behavioral intervention in a 24 hour, seven days a week continuum of care.

67. The State of Colorado does not make Intensive Home and Community-Based Services available on a consistent, statewide basis for children for who have been diagnosed with a mental health or behavioral disorder.

19

**C. The American with Disabilities Act and Section 504 of the Rehabilitation Act**

68.  Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. sec. 12101(b)(1).  The ADA acknowledges that "historically, society has tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem."  *Id.* Sec. 12101(a)(2).

69.  In enacting the ADA, Congress found that "[i]individuals with disabilities continually encounter various forms of discrimination, including . . . segregation. . . ."  *Id.* Sec. 12101(a)(5).

70.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *Id.* Sec. 12132.

71.  The Centers for Medicare & Medicaid Services (CMS) has long encouraged states to provide services in home and community settings, particularly for children, not only because of *Olmstead*, but because community-based care is considered a best practice for supporting children with disabilities and chronic conditions.  In addition, it is generally more cost-effective. *See* EPSDT: A Guide for States: Coverage in the Medicaid Benefit for Children and Adolescents, U.S. Dep't of Health & Human Servs., Ctrs., (June 2014) at pages 21-22; HCFA, Dear State Medicaid Director, Olmstead Update Nos. 2 and 3 (July 25, 2000), No. 5 (January 10, 2001); CMS, Dear State Medicaid Director (May 20, 2010); CMS, Joint CMCS and

SAMHSA Informational Bulletin:  *Coverage of Behavioral Health Services for Children, Youth, and Young Adults with Significant Mental Health Conditions (May 7, 2013).*

72.  Plaintiffs and the Class are "qualified individuals with a disability," meaning they are each an "individual with a disability, who with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  *Id.* Sec. 12131(2).

73.  Defendant Bimestefer administers HCPF, which is a "public entity" subject to the nondiscrimination requirements of Title II of the ADA.  *Id.* Sec. 12131.

74.  Regulations implementing the requirements of Title II of the ADA provide that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. Sec. 35.130(d). The most integrated setting appropriate to the needs of a qualified individual with a disability means "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible."  28 C.F.R. pt. 35, App. B.

75.  The ADA's implementing regulations further prohibit public entities from utilizing "criteria or methods of administration" that have the effect of subjecting qualified individuals with disabilities to discrimination or "[t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities. . . ."  *Id.* Sec. 35.130(b)(3)(ii).  The regulation also provide that, "A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an

individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.  *Id.* Sec. 35.130(b)(8).

76.  The implementing regulations of Title II of the ADA require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity."  *Id.* Sec. 35.130(b)(7).

77.  The United States Supreme Court has held Title II of the ADA prohibits the unjustified segregation of individuals with disabilities.  *Olmstead*, 527 at 600.  The Court explained its holding "reflects two evident judgments."  *Id.*  "First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life."  *Id.*  "Second, confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment."  *Id.* at 601.

78.  Similar to the ADA, Section 504 states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. Sec. 794(a).

79.  Under Section 504, "program or activity" means "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government."  *Id.* Sec. 794(b)(1).

22

80.  Section 504 defines an "individual with a disability" as "any person who has a disability as defined in. . . the Americans with Disabilities Act."  *Id.* Sec. 705(20)(B).

81.  Implementing regulations of Section 504 provide that programs or activities that receive federal funding may not deny or otherwise "afford a qualified [individual with a disability] an opportunity to participate in or benefit from the aid, benefit, or service" that is not "equal to" or "as effective as that afforded [or provided] to others."  45 C.F.R. Sec. 84.4 (b)(1)(i)-(iii); *see also* 28 C.F.R. Sec. 41.51 (DOJ regulations describing prohibitions on disability-based discrimination).

82.  The implementing regulations of Section 504 further provide that such programs must "afford [individuals with disabilities] equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."  45 C.F.R. Sec. 84.4 (b)(2); *see also* 28 C.F.R. Sec. 41.51(d) ("Recipients [of federal financial assistance] shall administer programs and activities in the most integrated setting appropriate to the needs of [qualified individuals with disabilities].")

83.  Because the language of Title II of the ADA and Section 504 of the Rehabilitation Act "is substantially the same, we apply the same analysis to both."  *Cohon v. State of New Mexico Department of Health,* 646 F.3d 717, 726 (10th Cir. 2011).

84.  The Defendant discriminates against the Plaintiffs and the Class by failing to provide them services in the most integrated setting appropriate to their needs.  An integrated setting is one that allows individuals to live in their home or a home-like setting with natural family supports and opportunity to attend school and participate in their communities with non-disabled peers.  The Defendant offers only a negligible amount of Intensive Home and Community-Based

Services to some children and not all children and have chosen instead to service children in needlessly segregated settings.

85. Hospitals, Psychiatric Residential Treatment Facilities (PRTFs), Residential Child Care Facilities (RCCFs) and Qualified Residential Treatment Programs (QRTPs) are all restrictive settings that severely limit a child from interacting with his or her family, school, peers and community. Additionally, out-of-home placements exacerbates many children's behavioral and emotional problems by severing these important connections. By failing to provide adequate home-based and community-based mental health / behavioral services, the Defendant has and continues to discriminate against the Plaintiffs and the Class by unnecessarily segregating them in violation of the ADA and Section 504 of the Rehabilitation Act.

86. The Defendant discriminates against the Plaintiffs and the Class by failing to provide them Intensive Home and Community-Based Services while the Defendant provides Intensive Home and Community-Based Services to other persons with other disabilities.

87. The Defendant provides greater Medicaid benefits to children (up to the age of 21) with an intellectual or developmental disability than to children with a mental health or behavioral disorder.

88. The Defendant provides greater benefits to children (up to the age of 21) who have a mental health diagnosis and are at risk of out of home placement and **who are not eligible for Medicaid** than to children who are eligible for Medicaid and who have a mental health diagnosis and are at risk of out of home placement. (emphasis added).

### D. Colorado's Medicaid Program Locks Out Needed Services For Children Under Age 21 with a Mental Health or Behavioral Disorder

89.  Home and community-based services (HCBS) provide opportunities for Medicaid beneficiaries to receive services in their own home or community rather than institutions or other isolated settings.  These programs services a variety of targeted populations groups, such as persons with intellectual or developmental disabilities, physical disabilities, and/or mental illness.  https://www.medicaid.gov/medicaid/home-community-based-services/index.html

**Colorado's Home and Community-Based Services Waivers Programs**

90. Colorado operates 11 Home and Community-Based Services Waivers (6 Adult Waivers and 5 Children Waivers), for certain groups of persons with disabilities.  HCBS services which would benefit Medicaid-eligible children up to age 21in Colorado with a mental health or behavioral disorder are denied access to medically needed HCBS services as they are excluded under the Colorado's HCBS program rules.

**Colorado's Community Mental Health Supports Waiver (CMHS)**

91.  Colorado's  Community Mental Health Supports Waiver which provides services to persons experiencing severe and persistent mental health needs is limited to persons age 18 and older, and thus excludes children with mental health needs under the age of 18.  Some of the services which are provided this program include:

> (i)  Alternative Care Facilities;
>
> (ii) Life Skills Training;
>
> (iii) Peer mentorship;
>
> (iv) Personal care;
>
> (v)  Personal emergency response system; and
>
> (vi) Transition set up.

https://hcpf.colorado.gov/community-mental-health-supports-waiver-cmhs

25

**Colorado's Children Habilitation Residential Program (CHRP)**

92.  Colorado's Children Habilitation Residential Program which services children with intensive behavioral or medical support needs through age 20 is limited to children with an intellectual or developmental disability, and thus excludes children with a mental health or behavioral disorder who do not have an intellectual or developmental disability. Some of the services which are provided in this program include:

> (i)   Habilitation Services – Residential 24-Hour Support;
>
> (ii)  Intensive Support Services which include Wraparound Facilitator and Wraparound Plan, Prevention/Monitoring, Child & Youth Mentorship;
>
> (iii) Transition Support Services which include Wraparound Facilitator and Wraparound Plan, Prevention/Monitoring, Child & Youth Mentorship;
>
> (iv) Respite Services; and
>
> (iv) Community Connector Services.

https://hcpf.colorado.gov/childrens-habilitation-residential-program-waiver-chrp

**Colorado's Children's Extensive Support Waiver**

93.  Colorado's Children's Extensive Support Waiver which serves children with intensive behavioral or medical needs through age 17 is limited to children with a developmental disability, and thus excludes children with a mental health or behavioral disorder who do not have a developmental disability.

https://hcpf.colorado.gov/childrens-extensive-support-waiver-ces

**Colorado's Developmental Disabilities Waiver (DD)**

94.  Colorado's Developmental Disabilities Waiver which serves persons age 18 and older who are in need of services and supports 24 hours a day that will allow them to live safely and participate in the community is limited to persons with developmental disabilities, and thus excludes children with a mental health or behavioral disorder who do not have a developmental disability.  Some of the services provided in this program include:

> (i)   Behavioral Services;
>
> (ii)  Day habilitation;
>
> (iii) Peer mentorship;
>
> (iv) Residential Habilitation (24-hour individual or group);
>
> (v)  Supported Employment; and
>
> (vi) Transition Set Up.

https://hcpf.colorado.gov/developmental-disabilities-waiver-dd

**Colorado's Brain Injury Waiver (BI)**

95.  Colorado's Brain Injury Waiver which serves persons age 16 and older is limited to persons with a brain injury, and thus excludes children with a mental health or behavioral disorder who do not have a brain injury. Some of the services provided in this program include:

> (i)   Behavioral Management;
>
> (ii)  Day Treatment;
>
> (iii)  Independent Living Skills Training;
>
> (iv)  Mental Health Counseling;
>
> (v)   Peer Mentorship;
>
> (vi)  Personal Care,

(vii) Personalized Emergency Response System;

(viii) Supported Living Program;

(ix)  Transition Set Up; and

(x)   Transitional Living Program.

https://hcpf.colorado.gov/brain-injury-waiver-bi

### D.  Colorado's Non-Medicaid Program Locks Out Needed Services For Medicaid-Eligible Children Under Age 21 with a Mental Health or Behavioral Disorder

### The Children and Youth Mental Health Treatment Act (CYMHTA)

96.  The Children and Youth Mental Health Treatment Act (CYMHTA) of Colorado

provides for mental health services to children who are not eligible for and cannot have Medicaid

(C.R.S. 27-67-101, *et. seq.*), and thus excludes mental health services to children who qualify for

Medicaid.  To be eligible for the Children and Youth Mental Health Treatment Act, a child or

youth:

(i)  Must have a mental health diagnosis

(ii) Must be at risk of out of home placement

(iii) Isn't eligible for Medicaid

(iv) Accesses the program prior to their 18th birthday and may continue to

remain eligible for services unto their 21st birthday.

(v)  Doesn't have a pending or current dependence and neglect action with

child welfare

https://cdhs.colorado.gov/behavioral-health/cymhta

97.  Some of the services provided in the CYMHTA program include:

(i)  Care Management

28

(ii) Community-Based Services which include,

- Individual and Family Therapy

- Therapeutic Foster Care

- Intensive In-Home Services

- Intensive Case Management

- Applied Behavioral Analysis

- Day Treatment

(iii)  Plan of Care

(iv)  Residential Treatment

98.  In FY2020, there was not a waitlist for children and youth who were at risk of out of home placement to begin receiving services.

99.  In FY20, CYMHTA program expanded its network of providers which will help ensure there are no gaps in the service coverage areas and help to increase the consistency of the CYMHTA statewide.

100.  CYMHTA implemented the Child and Adolescent Needs and Strengths (CANS) tool when evaluation a child or youth of eligibility as outline in C.R.S. 27-67-104(1)(a) on November 1, 2019.  The CANS is required at the initial CYMTHA assessment, 6 month assessment updates and discharge from the CYMHTA program.

101.  Once a child and family are approved for CYMHTA funding, the Mental Health Agency's CYMHTA liaison will help the parents choose an appropriate service provider.  The CYMHTA liaison notifies the family, both orally and in writing, of the clinical recommendations and potential providers for CYMHTA funding.

102.  In FY 2020, 40 children and youth receive residential treatment and 183 children and youth received community-based treatment services in the CYMHTA program.  The median length of stay in residential treatment for FY20 under CYMTHA funding was 4 months.  The median length of stay in community-based services under CYMTHA funding was 4 months.

## VI.   STATEMENT OF FACTS

### A.  The Plaintiffs' Experience with Colorado's Medicaid

103.  Plaintiffs, A.A., B.B. and C.C, are child Medicaid recipients residing across Colorado who have been diagnosed with a mental illness or condition.  Each Plaintiff, as well as the members of the Class, share a common and vital thread: all have experienced harm resulting from Defendant's failure to ensure the provision of necessary IHCBS.

105.  Plaintiffs, A.A., B.B. and C.C have unnecessarily cycled in and out of hospitals, emergency rooms, and psychiatric institutions due to the failure of the Defendant to arrange for medically necessary Intensive Home and Community Based Services in order to correct or ameliorate their mental health or behavioral disorders as required under the EPSDT provisions of the Medicaid Act.

### Plaintiff A.A.

106.  Plaintiff A.A. is a thirteen year old boy who is currently hospitalized at Children's Hospital Colorado since March 9, 2021.  Prior to March 9, 2021, A.A. was psychiatrically hospitalized at Cedar Springs Hospital from February 22, 2021 thru March 2, 2021.  A.A. has remained hospitalized at Children's Hospital since his discharge date of March 31, 2021 due to the inability and refusal of the Defendant to arrange or provide for intensive home and community-based residential service to A.A.

107.  A.A. has a diagnosis of Disruptive Mood Dysregulation Disorder, Attention Deficit Hyperactivity Disorder, Obsessive-Compulsive Disorder, Depressive Disorder, Reactive Attachment Disorder, Unspecified Anxiety Disorder, and some symptoms of Autistic Spectrum Disorder.  His psychiatric condition is further complicated by early maternal drug abuse with likely early trauma and possible prenatal drug exposure.

108.  A.A. has a significant history of aggressive and assaultive behavior towards his family, staff and peers at his school.  A.A. has had multiple incidents for extreme and disruptive and dangerous behavior, property destruction, self-injurious behavior including head-banging and slapping, and repeated and specific threats to harm and kill others.

109.  Many intensive assessment and treatment services and modalities have been attempted with A.A., but with only limited or intermediate-term success.  The services he has received include but are not limited to:  (1) individual therapy with multiple providers since the age of 2; (2) group therapy; (3) family therapy; (4) multiple IEP's including self-contained affective needs education; (5) occupational therapy and speech therapy; (6) psychological assessments; (7) applied behavior analysis (ABA) therapy; (8) medication evaluations and interventions targeting a wide range of mood, impulse control and sleep disorder symptoms, beginning at the age of 2; (9) in-home therapy for approximately two years; and (10) two psychiatric hospitalizations, including a current extended hospitalization.

110.  A.A. needs Intensive Home and Community-Based Services (IHCBS) in a residential treatment setting or facility to correct or ameliorate his mental and behavioral conditions.  A.A. needs a residential treatment setting or facility for the maximum reduction of his mental disability and for the restoration of him to the best functional level.  The request for

Intensive Home and Community-Based Services is not a request for services in a Psychiatric

Residential Treatment Facility (PRTF).

111.  On July 2, 2021 Dr. Kimberley Stasia recommended that A.A. receive residential

treatment.

112.  On July 8, 2021, Neil Sorokin, Ph.D., Licensed Psychologist, recommended that

A.A. receive residential treatment and other services.  Neil Sorokin stated:

> . . . [A.A.] is in need of residential treatment in order to:  (1) more closely
> evaluate his mental health condition including his dramatic mood swings and
> poorly controlled behavior; (2) provide him with a medication regimen that is
> optimal for his complex mental health condition while monitoring his behavior,
> symptoms, and side effects; (3) provide a safe and structured milieu to minimize
> the likelihood of further dangerous behavior with respect to himself and others;
> and (4) provide him with intensive individual, group and graduated family therapy
> to help him and his family better cope with his mental illness, and to help him
> reintegrate with his family.  After a successful course of residential treatment is
> concluded, intensive community-based services such as in-home individual and
> family therapy should be provided.  If despite such efforts he cannot be safely
> returned to his grandparents' care, DHS should be involved to provide an
> appropriate community placement.

113.  Unless A.A. receives the medically necessary Intensive Residential Services, he

will likely be at risk for many more hospitalizations.

114.  Due to the failure and refusal of the Defendant to arrange or provide for Intensive

Home and Community-Based Residential Services to A.A., he remains unnecessarily

institutionalized.

115.  A.A. is a qualified individual with a disability under the ADA and the

Rehabilitation Act.  The Defendant has regarded Plaintiff A.A. as having a disability within the

meaning of the ADA and the Rehabilitation Act.

116.  A.A. is a recipient of Medical Assistance, commonly known as Medicaid.

**Plaintiff B.B.**

117.   Plaintiff B.B. is a sixteen year old girl who since July 31, 2021, was either hospitalized or remained in the emergency room for an extended period of time (in emergency room from July 31, 2021 until August 24, 2021) at Children's Hospital Colorado.  B.B. remains hospitalized due to the failure of the Defendant to arrange for an Intensive Home and Community-Based Residential Program.  B.B. currently needs a long term residential program to correct or ameliorate her behavioral disorders.

118.   B.B.'s treatment providers have recommended that B.B. receive long term residential services.  Currently, the Defendant has been unable to arrange for a long-term residential program for B.B. in the State of Colorado.  Currently, the Defendant is attempting to locate an out-of-state long-term residential program for B.B.

119.   Prior to July 31, 2021, B.B. was at Third Way Center, a long term residential placement for approximately three weeks (July 6 thru July 30, 2021) before she was terminated from their program as the result of not being able to provide the level of care which she needs in order to address her mental health needs.

120.   Prior to July 6, 2021, B.B. was psychiatrically hospitalized at Children's Hospital since April 5, 2021 due to the failure of the Defendant to arrange for an Intensive Home and Community-Based long term residential program.  B.B. currently needs a long term residential program to correct or ameliorate her behavioral disorders.

121.   B.B. has a diagnosis of Posttraumatic Stress Disorder, Reactive Attachment Disorder, and Depressive Disorder.

122.   Since 2020, B.B. has been psychiatrically hospitalized 7 times and additionally, has had approximately 17 emergency room admissions.

123.  B.B. has a significant history of self-harm.  B.B. has busted her head open by banging it on the wall and then proceeding to shove objects into her wound – pencil lead, pen caps, then eventually a plastic spoon.  She has tied sheets around her neck.   B.B. has suicidal ideation.

124.  B.B. needs Intensive Home and Community-Based Services (IHCBS) in a long term residential treatment setting or facility to correct or ameliorate her mental and behavioral conditions.  B.B. needs a long term residential treatment setting or facility for the maximum reduction of her mental disability and for the restoration of her to the best functional level.  The request for Intensive Home and Community-Based Services is not a request for services in a Psychiatric Residential Treatment Facility (PRTF).

125.  Unless B.B. receives the medically necessary intensive residential services, she will continue to remain in the emergency room indefinitely and will also likely be at risk for many more hospitalizations.

126.  Due to the failure and refusal of the Defendant to arrange or provide for Intensive Home and Community-Based Residential Services to B.B, she remains unnecessarily institutionalized.

127.  B.B. is a qualified individual with a disability under the ADA and the Rehabilitation Act.  The Defendant has regarded Plaintiff B.B. as having a disability within the meaning of the ADA and the Rehabilitation Act.

128.  B.B. is a recipient of Medical Assistance, commonly known as Medicaid.

**Plaintiff C.C.**

129.   Plaintiff C.C. is a thirteen year old girl who is currently residing at home in need of Intensive Home and Community-Based Services to correct or ameliorate her behavioral

disorders. The Defendant has failed to provide the medically necessary Intensive Home and Community-Based Services which C.C. requires to correct or ameliorate her behavioral disorders.

130. Since March 22, 2021, C.C. has been psychiatrically hospitalized three times and has received five in-patient mental health placements.

131. C.C. has a diagnosis of Major Depression-Reoccurring, Generalized Anxiety Disorder, Depressive Disorder Unspecified, Insomnia Disorder, BiPolar Disorder and Trauma Related Disorder.

132. C.C. needs Intensive Home and Community-Based Services (IHCBS) to correct or ameliorate her mental and behavioral conditions. C.C. needs an IHCBS for the maximum reduction of her mental disability and for the restoration of her to the best functional level.

133. On August 17, 2021, Sarah Taylor, PA-C (Physician Assistant), stated that it is medically necessary for [C.C] to receive Intensive Home and Community-Based Services 7 days a week, 16.5 hours per week. The treatment milieu must have experts trained in working with children diagnosed with psychiatric and behavioral illnesses. Sarah Taylor, PA-C recommended that C.C. receive the following Intensive Home and Community-Based Services:

- A multi-disciplinary assessment of this youth.

- Development and implementation of a multidisciplinary treatment plan listing clear goals, objectives and interventions for treatment.

- 14 hours per week in the home of [C.C] (2 hours per day, Monday through Sunday) with a Licensed Professional Counselor that is trained in Adolescent Counseling.

- 1.5 hours per week with a Licensed Marriage and Family Counselor to meet with Addison and her family members.

- 1 hour per week with a Licensed Child and Adolescent Psychologist.

134.  C.C. is not receiving Intensive Home and Community-Based Services as recommended by Sarah Taylor, PA-C.

135.  Unless C.C. receives the medically necessary Intensive Home and Community-Based Services, she will likely be at risk for many more hospitalizations / institutionalizations and she is at risk of increased harm to self and others.

136.  Due to the failure and refusal of the Defendant to arrange or provide for Intensive Home and Community-Based Services to C.C., she remains at risk of institutionalization.

137.  C.C. is a qualified individual with a disability under the ADA and the Rehabilitation Act.  The Defendant has regarded Plaintiff A.B. as having a disability within the meaning of the ADA and the Rehabilitation Act.

138.  C.C. is a recipient of Medical Assistance, commonly known as Medicaid.

**B.  Defendant Discriminates Against the Plaintiffs and Class by Failing to Provide Them IHCBS While the Defendant Provides IHCBS to Other Persons With Other Disabilities**

139.  The Defendant provides greater Medicaid benefits to children (up to the age of 21) with an intellectual or developmental disability than to children with a mental health or behavioral disorder.  For children with an intellectual or developmental disability, the Defendant provides the following Intensive Home and Community Based Services and denies these same services to children with a mental health or behavioral disorder:

> (a)  Intensive Care Coordination:  Intensive Support Services which include Wraparound Facilitator and Wraparound Plan, Prevention/Monitoring, Child & Youth Mentorship;

> (b)  Peer Services:  Parent and Youth Support Services;

36

(c)  Intensive In-Home Services;

(d)  Respite Services;

(e)  Transition Support Services which include Wraparound Facilitator and

Wraparound Plan, Prevention Monitoring, Child & Youth Mentorship;

(f)  Behavioral Services;

(g)  Peer Mentorship; and

(h)  Mobile Crisis Response Services.

140.  The Defendant provides greater benefits to children (up to the age of 21) through "The Children and Youth Mental Health Treatment Act" (CYMHTA) of Colorado who have a mental health diagnosis and are at risk of out of home placement and who are not eligible for Medicaid than to children who are eligible for Medicaid and who have a mental health diagnosis and are at risk of out of home placement.  The Defendant provides Intensive Home and Community Based Services through CYMHTA and denies these same services to the Plaintiffs and Class.

## VII.   CAUSES Of ACTION

### COUNT  I

**VIOLATION OF THE FEDERAL MEDICAID ACT'S
EARLY AND PERIODIC SCREENING, DIAGNOSTIC AND TREATMENT (EPSDT)
MANDATE**

141.  The Plaintiffs incorporates and re-alleges paragraphs  1 through 140 as if fully set forth herein.

142.  In violation of the EPSDT provisions of the Medicaid Act, 42 U.S.C. Sec. 1396a(a)(10)(A), 1396d(a)(4)(B), and 1396a(a)(43)(C), the Defendant, while acting under the color of law, has failed to provide the Plaintiffs and Class with medically necessary Intensive

37

Home and Community-Based Services (IHCBS) when such services are medically necessary to treat or ameliorate their conditions.

143.  In violation of the EPSDT provisions of the Medicaid Act, the Defendant, while acting under the color of law, has failed to "arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment [Intensive Home and Community-Based Services]" to the Plaintiffs and Class pursuant to 42 U.S.C. Sec. 1396a(a)(43)(C).

144.  The Defendant's violations, which have been repeated and knowing, entitle the Plaintiffs and Class to relief under 42 U.S.C. Sec. 1983.

## **COUNT II**

### **VIOLATION OF THE FEDERAL MEDICAID ACT'S REASONABLE PROMPTNESS REQUIREMENT**

145.  The Plaintiffs incorporates and re-alleges paragraphs 1through 144 as if fully set forth herein.

146.  The named Plaintiffs and the Class they seek to represent are all Medicaid-eligible children with disabilities residing in Colorado.

147.  The Defendant is engaged in the repeated, ongoing failure to arrange for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment of medically necessary Intensive Home and Community-Based Services (IHCBS) with "reasonable promptness" in violation of 42 U.S.C. Sec. 1396a(a)(8) of the Federal Medicaid Act.

148.  The Defendant's violations, which have been repeated and knowing, entitle the Plaintiffs and Class to relief under 42 U.S.C. Sec. 1983.

## COUNT III

## VIOLATION OF AMERICAN WITH DISABILITIES ACT (ADA)

149.    The Plaintiffs incorporates and re-alleges paragraphs 1 through 148 as if fully set forth herein.

150.    Title II of the American with Disabilities Act (ADA) provides that no qualified person with a disability shall be subjected to discrimination by a public entity. 42 U.S.C. Sec. 42 U.S.C. Sec. 12131-32.  The ADA's implementing regulations further state that a public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  28 C.F.R. Sec. 35.130(d).  Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constituted prohibited discrimination under the ADA.

151.  The Colorado Department of Health Care Policy and Financing (HCPF) of which Defendant Bimestefer is Director is a "public entity" within the meaning of Title II of the ADA.

152.  The Plaintiffs and Class are qualified individuals with disabilities within the meaning of Title II of the ADA, and they are qualified to participate in or receive HCPF'programs, services, and activities, including necessary Intensive Home and Community-Based Services (IHCBS) under the Medicaid Act's EPSDT provisions.  42 U.S.C. Sec. 12102, 12131(2).

153.  The Defendant's policies and practices have the effects of:  (1) impermissibly segregating some Plaintiffs and Class members in institutions; and (2) placing other Plaintiffs and Class members at a serious risk of institutionalization.

154.  Defendant has violated Title II of the ADA, including 42 U.S.C. Sec. 12132; see also 28C.F.R. Sec. 35.130(d), Sec. 41.51(d), by excluding Plaintiffs and the Class from

participating in HCPF's Medicaid services, programs, and activities, and by failing to provide Plaintiffs and the Class with services in the most integrated setting appropriate to their needs for the following reasons:

    a.  Plaintiffs and the Class mental health or behavioral disorder can be treated at home and in their communities with Intensive Home and Community-Based Services (IHCBS)

    b.  Defendant fails to provide, or ensure the provision of Intensive Home and Community-Based Services (IHCBS) to Plaintiffs and the Class in the administration of HCPF's programs, activities, and services, including Medicaid.

    c.  Plaintiffs and the Class suffer unnecessary institutionalization in hospitals and psychiatric facilities, or are subjected to the serious risk of institutionalization, because Defendant fails to provide, or ensure the provision of Intensive Home and Community-Based Services (IHCBS) to Plaintiffs and the Class.

    d.  Plaintiffs and the Class would prefer to receive Intensive Home and Community-Based Services (IHCBS) for the treatment of the mental health or behavioral disorder and to live at home and remain in their communities.

155. The actions by HCPF constitute unlawful discrimination under the ADA and violate the integration mandate of the implementing regulations.

156. Defendant's actions constitute discrimination in violation of Title II of the ADA, 42 U.S.C. Sec. 12132; see also implementing regulations at 28 C.F.R. Part 35, including 28 C.F.R. Sec. 35.130(b)(7), by failing to make reasonable modifications to programs and services that

would enable Plaintiffs and the Class to fully and equally participate in Defendant's public

services, programs, and activities, for the following reasons:

      a.  Defendant has failed to modify HCPS's policies, practices, and procedures in

         order to provide, or ensure the provision of, necessary Intensive Home and

         Community-Based Services (IHCBS) to qualified individuals, including

         Plaintiffs and the Class.

      b.  The modification of HCPS's programs, services, and activities by Defendant in

         order to ensure that HCPS provide Plaintiffs and the Class with Intensive

         Home and Community-Based Services (IHCBS) would neither be

         unreasonable, nor would it constitute a fundamental alteration.  HCPF is

         already required by federal law to provide Intensive Home and Community-

         Based Services (IHCBS) to Plaintiffs and the Class under the EPSDT and

         Reasonable Promptness provisions of the Medicaid Act.  Accordingly,

         complying with Title II of the ADA does not impose any additional burdens or

         costs on HCPF.

157.  Defendant has utilized and adopted criteria and methods of administration that have

the effect of subjecting Plaintiffs and the Class to unnecessary institutionalization or serious risk

thereof, and therefore discrimination based on their disabilities, in failing to provide, or ensure

the provision of Intensive Home and Community-Based Services (IHCBS) to qualified

individuals, including Plaintiffs and the Class.  28 C.F.R. Sec. 35.130(b)(3).

158.  Policies and practices which result in disparate treatment of comparably situated

disabled persons constitutes prohibited discrimination under the ADA.

159.  The Defendant's disparate treatment of the Plaintiffs and Class who have been diagnosed with a mental health or behavioral disorder in contrast to those persons who have been diagnosed with an intellectual or developmental disability constitute unlawful discrimination under 42 U.S.C. Sec. 12132 as they are being treated worse than persons with other disabilities. The Defendant permits children with intensive behavioral needs with an intellectual or developmental disability to receive Intensive Home and Community-Based Services (residential and in-home services in the Colorado's Children Habilitation Residential Program, in the Colorado's Children Extensive Support Waiver and in the Colorado's Developmental Disabilities Waiver, but does not permit Intensive Home and Community-Based Services to children (up to the age of 21) who are Medicaid eligible and who have been diagnosed with a mental health or behavioral disorder.   The Defendant permits children who are not eligible for Medicaid and who have a mental health diagnosis under the Colorado Children and Youth Mental Health Treatment Act to receive Intensive Home and Community-Based Services, in contrast to the Plaintiffs and Class who are Medicaid eligible and who have a mental health diagnosis and need Intensive Home and Community-Based Services.

160.   Defendant provides greater Medicaid and non-Medicaid benefits of Intensive Home and Community-Based Services to other persons with disabilities in contrast to the Plaintiffs and Class, despite the fact that the Plaintiffs and Class have similar and comparable needs for Intensive Home and Community-Based Services.

161.  The Defendant has intentionally discriminated against the Plaintiffs and Class as they are being treated worse than persons with other disabilities.

162.  The Defendant has intentionally discriminated against the Plaintiffs and Class as they receive disparate treatment of comparable situated persons.

163.  The Defendant has intentionally discriminated against the Plaintiffs and Class by establishing a system which requires them to become institutionalized in order to receive or access Intensive Home and Community-Based Services, while other persons with disabilities are able to access Intensive Home and Community-Based Services without having to become institutionalized.

164.  Plaintiffs and the Class are therefore entitled to declaratory and injunctive relief to remedy Defendant's violations of Title II of the ADA

165.  The Defendant's violations, which have been repeated and knowing, entitle the Plaintiffs and Class to relief under 42 U.S.C. Sec. 1983.

## COUNT IV

## VIOLATION OF REHABILITATION ACT AND 42 U.S.C SECTION 1983

166.  The Plaintiffs incorporates and re-alleges paragraphs 1 through 165 as if fully set forth herein.

167.  The Rehabilitation Act, 29 U.S.C. Sec. 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability.  The implementing regulation for the statute requires that public and federally-funded entities provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability."  28 C.F.R. Section 41.51(d).  Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the Rehabilitation Act (RA).

168.  The Colorado Department of Health Care Policy and Financing (HCPF) is a recipient of federal funds and is, therefore, a "program or activity" under Section 504 of the Rehabilitation Act.  29 U.S.C. Sec. 794(b)(1).

169.  The Plaintiffs and Class are qualified individuals with a disability under Section 504 of the Rehabilitation Act.

170.  The actions by HFS constitute unlawful discrimination under 29 U.S.C. Sec. 794(a) and violate the integration mandate of the regulations implementing this statutory prohibition. 28 C.F.R. Sec. 41.51(d).

171.  Defendant has violated Section 504, 29 U.S.C. Sec. 794; see also 45 C.F.R. Sec. 84.4 (b)(1) (i)-(iii), (b)(2); and 28 C.F.R. Sec. 41.51(d), by administering HCPF's Medicaid services in a manner that fails to ensure that Plaintiffs and the Class receive federally-mandated EPSDT services, including Intensive Home and Community-Based Services, in the most integrated setting appropriate to their needs for the following reasons:

    a.  Plaintiffs and the Class mental health or behavioral disorder can be treated at home and in their communities with Intensive Home and Community-Based Services.

    b.  Defendant fails to provide, or ensure the provision of Intensive Home and Community-Based Services to Plaintiffs and the Class in the administration of HCPF's programs, activities, and services, including Medicaid.

    c.  Plaintiffs and the Class suffer unnecessary institutionalization in hospitals and psychiatric facilities, or are subjected to the serious risk of institutionalization, because Defendant fails to provide, or ensure the provision of Intensive Home and Community-Based Services to Plaintiffs and the Class.

44

     d.  Plaintiffs and the Class would prefer to receive Intensive Home and

       Community-Based Services for the treatment of the mental health or

       behavioral  disorder and to live at home and remain in their communities.

172.  Defendant's actions constitute discrimination in violation of  Section 504 by failing to make reasonable modifications to programs and services that would enable Plaintiffs and the Class to fully and equally participate in Defendant's public services, programs, and activities, for the following reasons:

     a.  Defendant has failed to modify HCPS's policies, practices, and procedures in

       order to provide, or ensure the provision of, necessary Intensive Home and

       Community-Based Services to qualified individuals, including Plaintiffs and

       the Class.

     b.  The modification of HCPS's programs, services, and activities by Defendant in

       order to ensure that HCPS provide Plaintiffs and the Class with Intensive

       Home and Community-Based Services would neither be unreasonable, nor

       would it constitute a fundamental alteration.  HCPF is already required by

       federal law to provide Intensive Home and Community-Based Services to

       Plaintiffs and the Class under the EPSDT and Reasonable Promptness

       provisions of the Medicaid Act.  Accordingly, complying with Title II of the

       ADA does not impose any additional burdens or costs on HCPF.

173.  Defendant has utilized and adopted criteria and methods of administration that have the effect of subjecting Plaintiffs and the Class to unnecessary institutionalization or serious risk thereof, and therefore discrimination based on their disabilities, in failing to provide, or ensure

the provision of Intensive Home and Community-Based Services to qualified individuals,

including Plaintiffs and the Class.  28 C.F.R. Sec. 41.51(b)(3); 45 C.F.R. Sec. 84.4.

174.  Plaintiffs and the Class are therefore entitled to declaratory and injunctive relief to

remedy violations of Section 504 by Defendant.

175.  The Defendant's violations, which have been repeated and knowing, entitle the

Plaintiffs and Class to relief under 42 U.S.C. Sec. 1983.

## VII.   REQUEST FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

1.  Certify this case to proceed as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and Rule 23(b)(2);

2.  Issue a Declaratory Judgment in favor of the Plaintiffs and the Class that Defendant

has failed to comply with the provisions of the EPSDT provisions and reasonable promptness

provisions of the Medicaid Act, the Americans with Disabilities Act, and the Rehabilitation Act;

3.  Issue Preliminary Injunctive and Permanent Injunctive relief requiring the Defendant

to take immediate and affirmative steps to arrange directly or through referral to appropriate

agencies, organizations, or individuals, corrective treatment of Intensive Home and Community-

Based Services to the Plaintiffs and Class, as required by the Medicaid Act, the Americans with

Disabilities Act and the Rehabilitation Act;

4.  Issue Preliminary Injunctive and Permanent Injunctive relief requiring the Defendant

to treat the Plaintiffs and Class in a similar manner as the Defendant treats other persons with

disabilities.

5.  Issue Preliminary Injunctive and Permanent Injunctive relief requiring the Defendant

to:

(A) Establish and implement policies, procedures, and practices to ensure the provision of Intensive Home and Community-Based Mental Health Services to Plaintiffs and the Class; and

(B) Establish and implement policies, procedures, and practices to ensure that Defendants do not discriminate against Plaintiffs and the Class; and that Defendants provide Plaintiffs and the Class the services for which they are eligible in the most integrated setting appropriate to their needs.

6. Issue Preliminary Injunctive and Permanent Injunctive relief requiring the Defendant to establish and implement policies, procedures, and practices to ensure that Defendant does not discriminate against Plaintiffs and the Class and that Defendant provides Plaintiffs and the Class the services for which they are eligible in the most integrated setting appropriate to their needs;

7. Retain jurisdiction over Defendant until such time as the Court is satisfied that Defendant's unlawful policies, practices, and acts complained of herein will not reoccur;

8. Award Plaintiffs and the Class the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. Section 12205; Section 504 of the Rehabilitation Act, and 42 U.S.C. Section 1988; and

9. Award such other relief as the Court deems just and appropriate.

*s/ Robert H. Farley, Jr.*

_____
Robert H. Farley, Jr.
Robert H. Farley, Jr., Ltd.
1155 S. Washington St.
Suite 201
Naperville, IL  60540
Telephone: 630-369-0103
farleylaw@aol.com

*and*

Jane Perkins
National Health Law Program
1512 E. Franklin St., Ste. 110
Chapel Hill, NC 27514
Telephone: 919-968-6308
perkins@healthlaw.org

*and*

Kim Lewis
National Health Law Program
3701 Wilshire Blvd, Suite #750
Los Angeles, CA 90010
Telephone: 310-736-1653
lewis@healthlaw.org

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2021, I electronically filed the foregoing
COMPLAINT FOR DECLARATORY AND INJUNCTION RELIEF with the Clerk of the
Court using the CM/ECF system.


*s/ Robert H. Farley, Jr.*
_____